HENRY LEBEAU, *pro ami.*, *vs.* DYERVILLE MFG. COMPANY.

PROVIDENCE—MARCH 14, 1904.

PRESENT: Stiness, C. J., Tillinghast and Douglas, JJ.

(1)  *Contributory Negligence.  New Trial.*

To warrant the court in setting aside a verdict on the ground of contributory negligence, it must appear—

(1) That the case was one in which the standard of ordinary care is fixed, and that plaintiff failed to attain such standard; for where the jury are called upon to assume a standard, and to measure plaintiff's conduct thereby, their finding must be clearly and palpably wrong to warrant the court in disregarding it.

(2) It must appear that plaintiff was sufficiently acquainted with the work to know and appreciate the dangers incident to it.

(3) Where nothing dangerous is apparent plaintiff has the right to presume the employment is reasonably safe and that he will be notified of special elements of danger not open to ordinary observation, but known to the employer.

TRESPASS ON THE CASE for negligence.  Heard on petition of defendant for new trial, and denied.

TILLINGHAST, J.  The plaintiff was seriously injured while in the act of cleaning out waste and dirt from beneath a carding machine in defendant's mill, by having his hand caught in the "licker-in," so-called, in said machine.  He was directed by the second-hand, at the instance of the overseer of the carding room, to sweep out under the carding machines—to clean out everything—and if he saw any waste hanging down underneath the machines, to pull it out.  And the second-hand testified that to do the work properly it was necessary to pull the dirt and waste out, over the sill of the machine, with one's hand.

The plaintiff was eighteen years of age at the time of the accident, and had been in defendant's employ since January, 1902.  His first work was that of running drawings in the carding room, which he followed for two weeks, when his work was changed to that of roping-boy, which work he continued to do up to the day of the accident, February 14, 1902.

He testifies, and his testimony is corroborated by that of the second-hand, that he had never cleaned out under the cards before, and that he had never seen under the cards, where the "licker-in" was situated. And the evidence shows that, owing to the collection of waste and dirt under the carding machines, it was impossible for anyone who was cleaning it out to see the "licker-in," which was situated in the neighborhood of eighteen or twenty inches back from the opening.

The reason for taking the plaintiff from his regular employment and setting him to do the work in question was that the person who had been operating the carding machines, and cleaning out under them, being about to terminate his employment, had neglected his work, and on the day of the accident had absolutely refused to clean out under the machines, so that they became choked up with dirt and waste.

The evidence shows that the plaintiff was not instructed as to the danger connected with the doing of said work.

At the trial of the case to the jury the plaintiff recovered a verdict in the sum of $3,075; and the case is now before us on the defendant's petition for a new trial on the ground that the verdict was against the evidence.

The only argument adduced in support of the petition is that the evidence shows contributory negligence on the part of the plaintiff in putting his hand into the machine in manner aforesaid.

It has been many times decided by this court—and such is the law everywhere—that the question of contributory negligence is one of fact for the jury, except in those cases where it is clear that reasonable minds could draw no other inference or conclusion, from the facts presented, than that the plaintiff was at fault. And as said by Mr. Beach in his valuable work on Contributory Negligence (see 3d revised, § 448): "It will, it is plain, in point of fact, very rarely occur that the case which the evidence discloses, either for or against the plaintiff, is so clear and incontestable as to leave no room for difference of opinion as to the merits. In almost every case something will appear upon which there may be contrariety of judgment, so that, in the majority of instances, the question

of the plaintiff's negligence will be one of fact to be ultimately determined by the jury."

(1)    In cases where the standard of ordinary care is fixed, then a failure to attain that standard is negligence in law; and if it appears that such negligence was the proximate cause of the injury, a verdict rendered in disregard of such standard should be promptly set aside. But where, as in most cases, there is no fixed standard, and the jury are called upon to assume a standard, and then to measure the plaintiff's conduct thereby; or, in other words, when they are called upon to say, under given circumstances, whether the plaintiff was in the exercise of ordinary care, their finding must be clearly and palpably wrong in order to warrant the court in disregarding it. *Clarke* v. *Lighting Co.*, 16 R. I. 463; *Elliott* v. *Ry. Co.*, 18 R. I. 707; *Sauthof* v. *Granger*, 19 R. I. 606, at p. 608; *LeFebvre* v. *Spinning Co.*, 24 R. I. 215; *Crandall* v. *Stafford Mfg. Co.*, 24 R. I. 555.

Again, in order to hold an employee guilty of contributory negligence, when injured in the course of his employment, it must appear that he was sufficiently acquainted with the work assigned to him to know and appreciate the dangers incident to it. *Pilling* v. *Machine Co.*, 19 R. I. 666; *Flynn* v. *Shaw*, 22 R. I. 328; *Mayott* v. *Norcross Bros.*, 24 R. I. 187, at p. 194; *Cox* v. *Chemical Co.*, 24 R. I. 503; *Pierce* v. *Mfg. Co.*, 25 R. I. 512.

And further, where nothing dangerous is apparent to the servant in connection with his employment, he has the right to presume that it is reasonably safe and that he will be notified of special elements of danger not open to ordinary observation, but which are known to his employer. *Laporte* v. *Cook*, 21 R. I. 158.

In view of the law applicable to the case at bar, as thus briefly stated, we are of the opinion that the question of contributory negligence was clearly one of fact for the jury to determine, and also that their finding in the plaintiff's favor is supported by the evidence.

It is true, as argued by defendant's counsel, that the testimony of the plaintiff, when he stated, in cross-examination,

that his hand was only four inches inside of the opening at the time it was caught, was not in accordance with the fact, as the "licker-in" was some eighteen or twenty inches inside of the opening, according to the uncontradicted testimony on the part of the defendant. But that is not the only statement which the plaintiff made about it, as appears from the following questions and answers: "Q. How far in could you see; could you see in at all? A. You could hardly see inside. Q. But you say you saw something hanging down? A. Yes, sir. Q. What was that hanging down near the door, or farther back? A. It was about three inches from the door, about three or four inches from the door. Q. Then you could see in three inches? A. Just about that. Q. But you couldn't see in five or six or eight or ten inches? A. I couldn't tell you. . . . Q. Is that just right, what you said about it a little while ago, that you couldn't see in there? A. I can not see far back in there. Q. How far back could you see, about? A. As I told you, about three or four inches, you could see plain. Q. And you couldn't see in there for ten or twelve inches? A. No sir. Q. Where was your hand when you got it hurt; was it three or four inches in, or farther in? A. I don't know how far it was in. Q. You didn't pay any attention to where the hand was going? A. I wasn't quick enough to watch where the hand was going. . . . Q. When it was first put in, you didn't see where it went? A. When I put in my hand to get the waste I only saw it when I touched the waste, and I didn't see it again until I pulled it out. Q. How far in was it when you got it caught? A. I don't know. . . . Q. And if the waste was four inches inside, and you took hold of it, your hand went in four inches, didn't it? A. It went in four inches; yes sir. . . . Q. And you put your hand in without trying to see anything? A. I was trying to look out for the waste and get it out in good shape. Q. And you didn't try to see where your hand was going at all, did you? A. Not after it was caught. Q. I am not asking you about that; when you put your hand in you didn't try to see where you were putting it, did you? A. I

only tried to see to put my hand and get the waste out, that is all. Q. You didn't pay any attention to anything else there? A. I didn't know there was danger there."

It is very evident from this testimony that the plaintiff had no definite knowledge as to the distance which his hand went into the machine when it was caught, and that he was not thinking of such a mathematical problem at that time. And the mere fact that his statements concerning it at the trial were contradictory simply goes to show that it was a matter to which he had given no thought and about which he was honestly ignorant.

At any rate, it was for the jury to say whether or not, in view of his inconsistent and contradictory statements relating to this matter, he was fairly entitled to belief in his testimony bearing upon the merits of the case.

Petition for new trial denied and case remanded for judgment on the verdict.

*Thomas Curran*, for plaintiff.
*Walter B. Vincent*, for defendant.